MARTY HOLLOWAY, Employee, Plaintiff v. TYSON FOODS, INC., Self-Insured, Employer, Defendant

No. COA07-930

(Filed 4 November 2008)

**1. Workers' Compensation— spoilation—adverse inference not drawn**

The decision of the Industrial Commission not to draw an adverse inference from spoilation of evidence in a workers' compensation case was reasonable and legally permissible. Spoilation gives rise to a permissible adverse inference as opposed to a presumption, plaintiff did not rely upon any other basis for sanc-

tions, such as the Rules of Civil Procedure, and the Commission's findings on the issue were sufficient.

**2. Workers' Compensation— work-related injury—circumstances not known—no death**

The Industrial Commission in a workers' compensation case properly denied the application of the presumption that an injury was work-related when the circumstances of work relatedness were unknown where no death occurred during the course of employment.

**3. Workers' Compensation— causation—delay in calling 911—no expert evidence of result**

The Industrial Commission did not err in a workers' compensation case by concluding that the 29-year-old plaintiff's employment did not increase the dangerous effect of his idiopathic cardiac condition, which led to a brain injury before he could be revived. Plaintiff pointed to a delay in calling 911 due to difficulty in finding a working telephone, but presented no expert evidence that the delay caused plaintiff to suffer more severe brain damage.

Appeal by plaintiff from opinion and award entered 4 April 2007 by the North Carolina Industrial Commission. Heard in the Court of Appeals 17 January 2008.

*David R. Paletta for plaintiff-appellant.*

*Brooks, Stevens & Pope, P.A., by Bambee B. Blake and Ginny P. Lanier, for defendant-appellee.*

GEER, Judge.

Plaintiff Marty Holloway appeals from an opinion and award of the Full Commission denying his claim for workers' compensation benefits. Plaintiff primarily argues on appeal that the Commission erred in not imposing sanctions on defendant Tyson Foods, Inc. for spoliation of evidence, including granting a presumption of compensability and monetary sanctions. Under controlling precedent, however, the spoliation of evidence gives rise to a permissive adverse inference and not a presumption. Moreover, the principle of spoliation of evidence as applied in North Carolina has evidentiary consequences and has not been relied upon as a basis for sanctions in the absence of other statutory or rule violations authorizing the imposi-

tion of sanctions. Because plaintiff has mistaken the law governing spoliation of evidence and has failed to demonstrate that the Commission's decision not to draw an inference adverse to defendant was unreasonable, we affirm.

## Facts

Plaintiff has not assigned error to most of the Commission's findings of fact. Those findings are, therefore, binding on appeal, *Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991), and establish the following.

On 16 September 2002, the date of the alleged injury, plaintiff, who was 29 years old, was employed in the maintenance division of the packing department at Tyson Foods Roasted Products Plant in North Wilkesboro, North Carolina. As a maintenance employee, plaintiff was responsible for maintaining defendant's Linx 6200 Inkjet printers that were used to print "sell by" dates on the packages of chicken. The printers were prone to ink blockages, requiring plaintiff, as one of his routine tasks, to clean the printhead by using a solvent manufactured by Linx or by running a "Clear Nozzle Sequence."

On 16 September 2002, plaintiff was performing a nozzle clear to remove an ink blockage. Regina Wood, an employee in the Labeling Department, saw plaintiff standing by the line as she was walking to her worktable. The Commission found:

> She saw the plaintiff fall and he didn't have anything in his hands when he fell. She indicated that it was just like plaintiff's knees went out from under him. She did not hear any shouts or sounds from the plaintiff. The plaintiff was not flinging his arms when he fell. While Ms. Wood saw the plaintiff start to fall, she did not see the plaintiff actually come into contact with the ground.

Employees then contacted the plant nurse, Rebecca Houck. Subsequently, 911 was called.

Houck observed that plaintiff had no pulse, no respirations, his pupils were non-reactive, and his face was cyanotic. Houck and other employees performed CPR until the emergency medical technicians ("EMTs") arrived. The EMTs, who found plaintiff pulseless and in ventricular fibrillation, assessed plaintiff as being in cardiac arrest. They transported him to Wilkes Regional Medical Center where he was diagnosed with cardiac arrest that had led to anoxia.

Later that day, plaintiff was transferred to the Coronary Care Unit of Baptist Hospital. A cardiac catheterization on 16 September 2002

revealed normal coronary arteries. Plaintiff was discharged from Baptist Hospital to Carolina Institute of Rehabilitation on 16 October 2002 with discharge diagnoses of, among others, sudden cardiac arrest, ventricular fibrillation, Brugada syndrome, anoxic brain injury, and seizures. Plaintiff was discharged from the Institute of Rehabilitation on 27 November 2002 with a diagnosis of anoxic encephalopathy. Plaintiff was instructed to participate in physical therapy for eight to 10 weeks, occupational therapy for eight weeks, and speech therapy for 12 to 14 weeks.

On 27 December 2002, plaintiff was evaluated by Dr. Kenny Hefner with Medical Associates of Wilkes, who diagnosed plaintiff with status post cardiac arrest due to Brugada syndrome with mild persisting neurologic deficits. From December 2002 through February 2004, plaintiff participated in outpatient occupational, speech, and physical therapy at Wilkes Regional Medical Center Department of Rehabilitation Services.

A medical note from Baptist Hospital dated 14 January 2003 noted a concern that plaintiff may have received an electric shock while working on a printer, but indicated that there was no definite evidence that plaintiff had received a shock and ultimately concluded that plaintiff had suffered sudden cardiac death, with its etiology not being clear. On 21 January 2003, plaintiff underwent internal cardiac defibrillator ("ICD") placement. The Commission found that "the competent, persuasive medical evidence of record establishes that the placement of an ICD is treatment that would not be provided to someone who had experienced a one-time electrical shock injury. Rather, this treatment is consistent with someone who has idiopathic ventricular fibrillation." Plaintiff was also treated with a course of Amiodarone, which the Commission found "is not a treatment that is consistent with a one-time electrical shock injury."

Plaintiff applied for Social Security disability benefits on 15 January 2003 on the basis that he could not work after experiencing a cardiac arrest that resulted in brain injury. On 11 June 2003, the Social Security Administration deemed plaintiff disabled as of 16 September 2002 due to the primary diagnosis of organic mental disorders (chronic brain syndrome) and a secondary diagnosis of epilepsy.

Plaintiff filed a Form 18 on 8 May 2003 asserting that he was electrocuted while working on a machine, resulting in brain damage. Defendant denied plaintiff's claim in a Form 61 dated 26 August 2003 and in a second Form 61 dated 12 January 2004. In an opinion and

award filed 14 June 2005, Deputy Commissioner Wanda Blanche Taylor denied plaintiff's claim on the grounds that plaintiff's heart condition and brain damage were caused by an idiopathic condition and did not arise out of his employment.

Plaintiff appealed to the Full Commission. The Commission filed an opinion and award on 4 April 2007, affirming Deputy Commissioner Taylor's opinion and award with minor modifications. The Commission determined that plaintiff's injury was the result of a condition "that was idiopathic in nature" and, therefore, was not compensable and that "[n]o attribute of plaintiff's employment increased the dangerous effect of plaintiff's idiopathic condition." The Commission accordingly denied plaintiff's claim for workers' compensation benefits. Plaintiff timely appealed to this Court.

## Discussion

Appellate review of a decision of the Industrial Commission "is limited to determining whether there is any competent evidence to support the findings of fact, and whether the findings of fact justify the conclusions of law." *Cross v. Blue Cross/Blue Shield*, 104 N.C. App. 284, 285-86, 409 S.E.2d 103, 104 (1991). "The findings of the Commission are conclusive on appeal when such competent evidence exists, even if there is plenary evidence for contrary findings." *Hardin v. Motor Panels, Inc.*, 136 N.C. App. 351, 353, 524 S.E.2d 368, 371, *disc. review denied*, 351 N.C. 473, 543 S.E.2d 488 (2000). The Commission's findings of fact may only be set aside if there is a "complete lack of competent evidence to support them." *Young v. Hickory Bus. Furniture*, 353 N.C. 227, 230, 538 S.E.2d 912, 914 (2000). This Court reviews the Commission's conclusions of law de novo. *Deseth v. LensCrafters, Inc.*, 160 N.C. App. 180, 184, 585 S.E.2d 264, 267 (2003).

I

**[1]** Plaintiff first contends that the Commission erred in not imposing sanctions upon defendant as a result of spoliation of evidence. Plaintiff argues that defendant did not preserve the scene or the equipment involved—including the printer, the power cord, the power outlet, and the conveyor assembly—so as to allow experts to reconstruct the accident scene and determine whether there was an electrical hazard. Plaintiff sought, as sanctions for spoliation of evidence, a presumption of compensability, the payment of costs incurred for accident investigation, and attorneys' fees.

**HOLLOWAY v. TYSON FOODS, INC.**

[193 N.C. App. 542 (2008)]

We first note that plaintiff does not, in his brief, specifically address the controlling North Carolina authority. While plaintiff presented the issue of spoliation as a matter of sanctions, our cases have held that the principle of "spoliation of evidence" means that "a party's intentional destruction of evidence in its control before it is made available to the adverse party can give rise to an inference that the evidence destroyed would injure its (the party who destroyed the evidence) case." *Red Hill Hosiery Mill, Inc. v. Magnetek, Inc.*, 138 N.C. App. 70, 78, 530 S.E.2d 321, 328, *disc. review denied*, 353 N.C. 268, 546 S.E.2d 112 (2000). Although plaintiff sought a presumption of compensability as a consequence of the claimed spoliation, our courts "have determined that spoliation of evidence gives rise to an adverse inference as opposed to a presumption." *McLain v. Taco Bell Corp.*, 137 N.C. App. 179, 188, 527 S.E.2d 712, 719, *disc. review denied*, 352 N.C. 357, 544 S.E.2d 563 (2000). If, however, the evidence withheld or destroyed was equally accessible to both parties or there was a fair, frank, and satisfactory explanation for the nonproduction of the evidence, "the principle is inapplicable and no inference arises." *Id.* at 184, 527 S.E.2d at 716.

Nevertheless, even if a party presents evidence of spoliation sufficient to give rise to an adverse inference, that inference " 'is permissive, not mandatory.' " *Id.* at 185, 527 S.E.2d at 717 (quoting *Blinzler v. Marriott Int'l, Inc.*, 81 F.3d 1148, 1159 (1st Cir. 1996)). As a result, if " 'the factfinder believes that the documents were destroyed accidentally or for an innocent reason, then the factfinder is free to reject the inference.' " *Id.* (quoting *Blinzler*, 81 F.3d at 1159). *See also Arndt v. First Union Nat'l Bank*, 170 N.C. App. 518, 527, 613 S.E.2d 274, 281 (2005) ("The factfinder *is free* to determine the [evidence was] destroyed accidentally or for an innocent reason and reject the inference." (internal quotation marks omitted)).

In this case, the Commission concluded that "[t]he plaintiff's assertion that the defendant is subject to sanctions for spoliation of evidence is misplaced and without merit[,]" citing in support of that conclusion *Red Hill Hosiery*, *McLain*, and *Yarborough v. Hughes*, 139 N.C. 199, 209, 51 S.E. 904, 907-08 (1905), the case upon which both *Red Hill* and *McClain* relied. *McLain* specifically establishes that plaintiff's request for a burden-shifting presumption rather than an inference was "misplaced" and meritless, as the Commission observed. To the extent that plaintiff sought monetary sanctions, *Red Hill Hosiery*, *McLain*, and *Yarborough* indicate that the spoliation of evidence principle is an evidentiary matter.

While conduct giving rise to a spoliation inference might also support the imposition of sanctions under the Rules of Civil Procedure or other statutes, plaintiff did not rely upon any other basis for sanctions. *See Jones v. GMRI, Inc.*, 144 N.C. App. 558, 565, 551 S.E.2d 867, 872 (2001) (noting that plaintiffs failed to seek an instruction on spoliation, but instead contended that "the court should have used this doctrine as a basis to strike the defense pursuant to Rules 26(b)(3) and 37(b)(2)(B)"; holding that trial court did not abuse its discretion in denying sanctions), *cert. improvidently allowed*, 355 N.C. 275, 559 S.E.2d 787 (2002). Thus, the Commission was correct when it determined that the precise request made by plaintiff was not consistent with the law.

Further, it is apparent from the Commission's findings of fact that it considered plaintiff's contentions regarding spoliation, but chose not to draw an adverse inference. Although the Commission did not specifically reference spoliation in its findings of fact, the opinion and award contains extensive findings directly relevant to the issue, including findings regarding what defendant's employees did with the printer, testing conducted on the printer, reasons that the printer was returned to service, testing by the printer's manufacturer, the location of the printer on subsequent dates, the testing of the printer and other equipment by defendant's expert, and plaintiff's expert's testing. The Commission acknowledged that plaintiff's expert "implied that Tyson refurbished the plaintiff's printer in anticipation of his inspection, although he put forth no evidence to substantiate this allegation." The Commission decided to "give[] little weight to the opinion of [plaintiff's expert] because there is insufficient evidence of record to substantiate the same." The Commission further found: "The record shows that prior to September 16, 2002, there had never been any kind of electrical shock issues with any of the Linx 6200 inkjet printers at Tyson Foods. Tyson Foods continued to use the plaintiff's printer through July/August 2004 without incident." We hold that the Commission's findings are sufficient to address the issue of spoliation.

The Commission, acting as the trier of fact, was free to accept or reject the inference. "Inferences from circumstances when reasonably drawn are permissible and that other reasonable inferences could have been drawn is no indication of error; deciding which permissible inference to draw from evidentiary circumstances is as much within the fact finder's province as is deciding which of two contradictory witnesses to believe." *Snow v. Dick & Kirkman, Inc.*, 74 N.C.

**HOLLOWAY v. TYSON FOODS, INC.**

[193 N.C. App. 542 (2008)]

App. 263, 267, 328 S.E.2d 29, 32, *disc. review denied*, 314 N.C. 118, 332 S.E.2d 484 (1985). Based upon our review of the record and the Commission's findings of fact, we believe that the Commission's decision not to draw an adverse inference was reasonable and legally permissible. *See id.* ("In this instance the inferences as to accident and effect that the Commission drew from the wealth of competent evidence presented were both factually reasonable and legally permissible in our opinion."); *Westbrooks v. Bowes*, 130 N.C. App. 517, 526, 503 S.E.2d 409, 415 (1998) ("In our opinion, the inferences drawn by the Commission regarding the cause of Westbrooks' death are factually reasonable and legally permissible.").

II

**[2]** Plaintiff next contends that the Commission erred when it concluded: "Plaintiff is not entitled to any presumption that this claim is compensable. The *Pickrell* presumption does not extend to a plaintiff who survives his injury. *Janney v. J.W. Jones Lumber Co.*, 145 N.C. App. 402, 550 S.E.2d 543 (2001)." In *Pickrell v. Motor Convoy, Inc.*, 322 N.C. 363, 370, 368 S.E.2d 582, 586 (1988), our Supreme Court held: "In cases . . . where the circumstances bearing on work-relatedness are unknown and the death occurs within the course of employment, claimants should be able to rely on a presumption that death was work-related, and therefore compensable, whether the medical reason for death is known or unknown."

In *Janney v. J.W. Jones Lumber Co.*, 145 N.C. App. 402, 406, 550 S.E.2d 543, 546 (2001), this Court specifically limited *Pickrell* to cases involving deaths: "[W]e decline to adopt the *Pickrell* presumption in this workers' compensation case not resulting in death." *Id.* The Court considered and rejected the argument—made also by plaintiff in this case—that his lack of memory placed him in the same position as the *Pickrell* plaintiff. *Id.* (explaining that although employer may. be in better position than deceased employee's family to present evidence on cause of death, "[t]he same cannot be said for an employee who has survived his injury, even an employee who cannot remember the details of his accident").

Although plaintiff argues extensively in his brief as to why the *Pickrell* presumption should apply, he never addresses *Janney*. "Where a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court." *In re Appeal from Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d

30, 37 (1989). Accordingly, the Commission properly determined under *Janney* that the *Pickrell* presumption did not apply in this case.

III

[3] Finally, plaintiff contends that even if his brain injury was caused by an idiopathic condition, he was entitled to compensation because hazardous conditions of employment contributed to that injury. Plaintiff points to the fact that the plant nurse asked an employee to call 911, but the phones in the packing department and in a nearby office were not working. The employee ultimately reached the front desk, which in turn relayed the message to the guard post, and an employee at the guard post called 911. Plaintiff contends that there was a delay of 19 minutes in calling 911.

In arguing that this delay entitled him to compensation, plaintiff asserts: "Regardless of the cause of this emergency, Mr. Holloway sustained a more severe injury as a result of the danger Tyson created by restricting access to an outside phone line that could call 911." Plaintiff, however, failed to present any expert evidence to support this assertion. Although plaintiff points to Dr. David Sane's testimony that "it's quite likely that [plaintiff] sustained brain damage prior to arrival at the Wilkes County ED[,]" neither Dr. Sane nor any other expert witness testified that the delay in calling 911 caused plaintiff to suffer more severe brain damage. *See Click v. Pilot Freight Carriers, Inc.*, 300 N.C. 164, 167, 265 S.E.2d 389, 391 (1980) ("[W]here the exact nature and probable genesis of a particular type of injury involves complicated medical questions far removed from the ordinary experience and knowledge of laymen, only an expert can give competent opinion evidence as to the cause of the injury.").

Plaintiff explored generally with Dr. Sane the importance of CPR and defibrillation. Dr. Sane confirmed that the optimum time frame to defibrillate a person in cardiac arrest is "[i]mmediately." He agreed (1) that the sooner an individual in cardiac arrest has his heart restarted, the better it is for the patient and (2) that CPR with defibrillation is more beneficial than CPR without defibrilliation. Dr. Sane also testified that "the longer you do CPR without restoring the cardiac rhythm to normal then that does carry a greater risk of brain damage and other damage." When, however, asked what was the most likely point in time that plaintiff sustained brain damage, Dr. Sane responded that "the greatest risk would've been the time when he was not receiving any resuscitated therapy or any CPR or the like, so prior to the onset of the CPR would've been the greatest period of risk."

The record thus lacks the necessary evidence that the claimed 19-minute delay between the plant nurse's starting CPR and the 911 call in fact contributed to a worsening of plaintiff's brain damage.

This Court has held: "When the employee's idiopathic condition is the sole cause of the injury, the injury does not arise out of the employment. The injury does arise out of the employment if the idiopathic condition of the employee combines with 'risk[s] attributable to the employment' *to cause* the injury." *Mills v. City of New Bern*, 122 N.C. App. 283, 285, 468 S.E.2d 587, 589 (1996) (emphasis added) (internal citations omitted) (quoting *Hollar v. Montclair Furniture Co.*, 48 N.C. App. 489, 496, 269 S.E.2d 667, 672 (1980)). Plaintiff failed to make the necessary showing of causation and, therefore, the Commission did not err in concluding that "[n]o attribute of plaintiff's employment increased the dangerous effect of plaintiff's idiopathic condition."

Affirmed.

Judges TYSON and STROUD concur.