SCR-Tech LLC v. Evonik Energy Servs. LLC, 2014 NCBC 70.

STATE OF NORTH CAROLINA

COUNTY OF MECKLENBURG

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
08 CVS 16632

SCR-TECH LLC,

          Plaintiff,

     v.

EVONIK ENERGY SERVICES LLC,
EVONIK ENERGY SERVICES
GMBH, EVONIK STEAG GMBH,
HANS-ULRICH HARTENSTEIN, and
BRIGITTE HARTENSTEIN,

          Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**ORDER**

{1}    THIS MATTER is before the Court on a number of discovery matters. There is a separate pending motion for summary judgment which the Court will address in a separate order.

> *King & Spalding LLP by Timothy G. Barber, Natasha H. Moffitt, Antonio E. Lewis, David Glen Guidry, John W. Harbin, and Mary Katherine Bates for Plaintiff SCR-Tech, LLC.*
>
> *Troutman Sanders LLP by Samuel T. Reaves and Hamilton Martens Ballou & Carroll, LLC by Beverly A. Carroll for Defendants Steag Energy Services, LLC, Hans-Ulrich Hartenstein, and Brigitte Hartenstein.*
>
> *Bryan Cave, LLP by Mark Vasco, Benjamin F. Sidbury, and Christina Davidson Trimmer and Alston & Bird, LLP by M. Scott Stevens for Defendants Steag Energy Services GmbH and Steag GmbH.*

Gale, Chief Judge.

{2}    The Court does not here repeat the underlying facts of the several claims in the action which are fully detailed in the Court's July 22, 2011, Order and Opinion on Defendants' Joint Motion for Summary Judgment on the Non-Existence of Trade Secrets or Confidential Information. The Court will state additional facts

or procedural history related to or necessary for decision of each discrete discovery matter discussed below.

1. **Defendants' Renewed Motion to Preclude Evidence of Alleged Confidential Information, and to Strike Plaintiffs' Third Supplemental Response to Steag Interrogatory 1**

{3}     Essentially, Defendants seek to preclude Plaintiff from pursuing claims for misappropriation of confidential information of which Plaintiff was aware when filing the action but which it chose not to disclose in an early interrogatory. Instead, Defendants ask the Court to restrict the claim to only that misappropriation of which Plaintiff could not have been aware without the benefit of discovery. Defendant STEAG Energy Services, LLC ("Steag") served its interrogatory number 1, asking Plaintiff to identify trade secrets and confidential or propriety information it contended had been misappropriated. Plaintiff's response described the information broadly. Defendants challenged the adequacy of the disclosures. The Court ordered that Plaintiff must detail its trade secrets more specifically before moving forward with discovery. *SCR-Tech LLC v. Evonik Energy Servs. LLC*, Order, 08 CVS 16632 [Mecklenburg] (N.C. Super. Ct. May 19, 2009). Plaintiff limited its supplemental response to trade secrets and contends that it reached agreement with Defendants to revise interrogatory number 1 to be limited to trade secrets.

{4}     Later, Defendants filed their Joint Motion to Preclude Evidence of Alleged Confidential Information Stricken from Plaintiff's Discovery Response ("Motion to Preclude"), contending that Plaintiff should be barred from supplementing any response to interrogatory number 1 and then pursuing claims regarding alleged misuse of confidential information. On March 19, 2013, the Court ruled that Plaintiff was entitled to discovery before it would be required to file a final supplement to its interrogatory response. At the same time, the Court noted that this case is unusual because Plaintiff had the benefit of significant forensic examination in advance of filing its claims.

{5}     Plaintiff then filed its Third Supplemental Response to Interrogatory Number 1.  Defendants responded by letter, renewing their Motion to Preclude, which had been filed on July 17, 2013.  That motion seeks to strike portions of the response and to preclude evidence of confidential information of which Plaintiff knew when filing its claims without the need for discovery.  Alternatively, Defendants ask the Court to order Plaintiff to state with greater specificity the confidential information it claims was misappropriated.

{6}     The Court has carefully considered the parties' submissions and arguments, and the authorities cited.  Having done so, it concludes that Defendants' Motion to Preclude should be DENIED at this time, without prejudice to consideration by later motion at the close of discovery whether Plaintiff is able to delineate its claim with sufficient specificity to withstand summary judgment.

## 2. Defendants' Motion for Sanctions for Spoliation of Evidence and Violation of Rule 26(g)

{7}     Defendants seek sanctions against Plaintiff based on (1) spoliation of data used to prepare a pre-litigation forensic report and (2) SCR-Tech's improper interrogatory response that the author of the forensic report could not be identified, when, in fact, Plaintiff's counsel had earlier identified that company, as indicated by his notes.  Defendants ask that the sanctions include (1) precluding SCR-Tech from discovery relating to any alleged wrongdoing by Defendants before December 15, 2005, a date after the forensic report had been prepared and on which SCR-Tech and the Hartensteins entered a settlement agreement; (2) an adverse inference that, when the Hartensteins were terminated from SCR-Tech on March 18, 2005, the date of the report, no SCR-Tech confidential or trade secret information had been removed from and was not returned to SCR-Tech; (3) an adverse inference that any documents or materials created or modified before March 18, 2005, that have now been lost would have been favorable to Defendants; (4) dismissal of all of SCR-Tech's claims premised on misappropriation of confidential, proprietary, and trade secret information; and (5) an evidentiary limitation precluding SCR-Tech from

introducing into evidence or otherwise relying on the forensic report, any e-mails between CompuServe representatives and the Hartensteins, or any efforts to delete or destroy such e-mails (although Defendants have also indicated that they may use the report in their defense). (Defs.' Resp. SCR-Tech's Post-Hr'g Br. Concerning Defs.' Mot. Sanctions Relating to SCR-Tech's Spoliation Evidence and Violation of Rule 26(g) ("Defs. Post-Hr'g Br.") 17; Mem. Supp. Defs.' Mot. Sanctions Relating to SCR-Tech's Spoliation Evidence and Violation of Rule 26(g) ("Defs. Supp. Br. Rule 26(g) Sanctions") 18.)

a. Factual Background

{8} SCR-Tech's parent, Catalytica Energy Services, Inc. ("Catalytica"), retained Forentech, LLC ("Forentech") to do a forensic examination of computer files maintained by SCR-Tech or the Hartensteins, who were then SCR-Tech's principal officers. (Pl.'s Supplemental Resp. STEAG Energy Services, LLC's Interrog. No. 35). On February 28, 2005, Robert Zack, Catalytica's CEO and an officer of SCR-Tech, supervised Forentech. Zack and Forentech's representative went on-site at SCR-Tech's North Carolina office and made full images of SCR-Tech's servers and the Hartensteins' laptop computers. Forentech issued an interim report on March 18, 2005 ("the Report"); Zack terminated the Hartensteins' employment the same day.

{9} Forentech submitted the Report to Catalytica through Zack. Zack was at that time an SCR-Tech manager and officer. He apparently granted consent on SCR-Tech's behalf, allowing Forentech access to SCR-Tech's data. There is no direct evidence that the Report was furnished to SCR-Tech in any other way.

{10} Forentech furnished certain data along with its Report, including some, but not all, e-mails, from the Hartensteins' accounts with CompuServe. Forentech did not, however, provide Catalytica with the bit-by-bit images it made of the servers and laptops. These images were retained by Forentech and ultimately discarded on an uncertain date.

{11}    SCR-Tech and the Hartensteins engaged in substantial negotiations between their termination on March 18, 2005, and the date of a Settlement Agreement they executed on December 15, 2005.  During this period, SCR-Tech's counsel informed the Hartensteins that SCR-Tech was considering pursuing claims for violations of fiduciary duties and misappropriation of protected information, based on, in significant part, findings referenced in the forensic examination.  Although SCR-Tech made repeated references to the Report, it did not identify Forentech as the company that had undertaken the examination.  The correspondence did not indicate that SCR-Tech had not itself arranged for the Report or that it had not reviewed the Report although referring to its conclusions in its correspondence.

{12}    There is no evidence that either Catalytica or SCR-Tech ever advised Forentech to preserve either the Report or any of the underlying information that Forentech obtained during the course of its work prior to December 15, 2005.  Plaintiff instituted the present lawsuit on July 30, 2008.  SCR-Tech has indicated that it did not undertake document preservation efforts before that date.  There is no evidence of any communication between SCR-Tech and Forentech between 2008 and 2010.

{13}    Plaintiff claims that it had no reason to anticipate litigation with the Defendants between December 15, 2005, and shortly before instituting the present litigation, and, therefore, had no duty to seek to preserve documents, particularly the Report or its underlying data, considering that Plaintiff indicates that it has never possessed the Report.  Defendants challenge Plaintiff's assertion regarding the date on which it anticipated litigation after December 15, 2005, relying in part on Plaintiff's withholding of documents dated during November 2006, stating that they are protected as work product prepared in anticipation of litigation.

{14}    During the course of discovery, Defendants have diligently attempted to obtain the Report and discover its author, including requesting this information from Plaintiff.  Up until 2013, Plaintiff indicated that it could not identify the author and could not produce the Report.  At a 2012 status conference, in discussion

regarding whether Plaintiff had a basis to assert misappropriation of confidential information, SCR's counsel advised the Court that SCR-Tech "d[id] not have the forensic examination." (Status Conference Tr. 38:6–:14, Nov. 2, 2012; Pl.'s Supplemental Resp. STEAG Energy Servs., LLC's Interrog. No. 35.) As late as March 2013, SCR's in-house counsel Joe Cogdell represented that SCR-Tech had "no knowledge of the name or address of the forensic firm or its specialist." (Pl.'s Resps. Def. Steag Energy Services, LLC's Third Set Interrogs. Reqs. Produc. Docs. ("Pl. Resps. Def. Steag Third Set Interrogs.") No. 35.)

{15} SCR-Tech contends that it never saw the Report until around June 2013, when it was produced in discovery as a result of a subpoena to former officers of Catalytica. There is no direct evidence to the contrary. SCR-Tech asserts that it first learned of Forentech's identity in 2010, as reflected in notes made by Cogdell, indicating that he called Forentech and spoke with a Forenetech employee who had not been involved in the investigation or preparing the Report. Forentech's principal, Mark Cardwell, prepared the Report and was away at the time of Cogdell's call. Cogdell indicates that he was satisfied after his call that Forentech had no relevant information, did not pursue the matter further, and forgot Forentech's identity until he later reviewed the notes of his telephone call. (Cogdell Aff. ¶ 11.) He did not remember Forentech's identity when SCR-Tech filed its March 2013 discovery response. He recalled the identity three months later when reviewing his prior notes, and SCR-Tech filed a supplemental discovery response identifying Forentech. SCR-Tech indicates that its counsel made inquiry of Catalytica's former officers in 2012 and 2013, including Zack, and were advised that these officers could not remember the name of the firm that did the forensic examination. (Lewis Aff. ¶¶ 5–6).

{16} Zack testified that he, too, forgot Forentech's identity until he was reminded of it in preparation for his deposition in this litigation in 2013.

{17} While Cogdell indicates that he concluded that Forentech had no relevant information as a result of the 2010 call so that the matter need not be further pursued, there is no indication that he made any effort to speak with

Cardwell or that he asked for any written confirmation that Forentech did not have the Report or any underlying data. SCR-Tech did not write Forentech in 2010 or thereafter to request that it preserve any documentation that might still exist.

{18} Defendants issued a subpoena to Forentech. Forentech produced the Report and approximately 3,500 underlying documents that Forentech had retained. However, Forentech no longer has a portion of the Hartenstein's CompuServe email accounts, nor the bit-by-bit images it had obtained. (Cardwell Dep. 42:3–44:24.) Cardwell testified that Forentech destroyed the data sometime after the investigation concluded. (Cardwell Dep. 69:16–70:13.) Cardwell could not, however, recall when the documents were destroyed or whether he consulted with Catalytica before destroying them; but, he stated that he generally retains hard drives for years and consults the client before destroying them. (Cardwell Dep. 199:4–:16.)

{19} Cardwell confirmed that no one at SCR-Tech or Catalytica ever asked Forentech to preserve the materials following the investigation. (Cardwell Dep. 78:7–:19.)

{20} In addition to the 2005 correspondence noted earlier, Plaintiff subsequently made clear that it considers the Report to be relevant.

{21} The Amended Complaint refers to the investigation. In early 2012, SCR-Tech again referenced the forensic examination to support its allegations that "documents containing SCR-Tech's confidential, proprietary and trade secret information were either removed from, or not returned to, SCR-Tech's premises by the Hartensteins at the time their employment was terminated." (Pl. SCR-Tech LLC's Supplemental Resps. Hans-Ulrich Hartenstien [sic] and Brigitte Hartenstein's Interrogs. Nos. 4, 5, 6, 8 and 13 ("Pl. Supplemental Interrogs. Resps.") No. 4; Compl. ¶ 33; Am. Compl. ¶ 33.)[1]

---

[1] The parties have filed all materials in support of their arguments under seal, even though they also contain information that has been included in public filings. The Court has been careful to guard against public disclosure, at least at this time, of underlying technologies that may be subject to trade secrets claims. The Court does not believe that the information noted in this Order, which

{22}    Defendants assert that they have been prejudiced by the destruction of this evidence because the Report itself indicates that a review of underlying data affirms the absence of direct evidence of their misappropriation of any information. Plaintiff counters that any potential prejudice that might have existed had the Report not been uncovered has now been avoided due to the Report's production, and further that the lost data would more likely be prejudicial to Defendants and would show a pattern of covering-up. (Pl.'s Br. Opp'n Defs.' Mot. Sanctions ("Pl. Opp'n Br. Sanctions") 3; Report 4.)

{23}    Based on these facts, Defendants contend that Plaintiff is guilty of both spoliation of evidence and violating Rule 26(g).

### b. Legal Principles

#### i. Spoliation

{24}    Spoliation is "the destruction or material alteration of evidence or . . . the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *EEOC v. Womble Carlyle Sandridge & Rice, LLP*, No. 1:13-CV-46, 2014 U.S. Dist. LEXIS 793, at *6 (M.D.N.C. Jan. 6, 2014) (quoting *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001)). Where an individual "by his own tortious act withholds evidence by which the nature of his case would be manifested, every presumption to his disadvantage will be adopted." *McClain v. Taco Bell Corp.*, 137 N.C. App. 179, 183, 527 S.E.2d 712, 716 (2000) (quoting *Yarborough v. Hughes*, 139 N.C. 199, 209, 51 S.E. 904, 908 (1905)). However, such a tortious act need not necessarily be demonstrated. "Although destruction of evidence in bad faith 'or in anticipation of trial may strengthen the spoliation inference, such a showing is not essential to permitting the [adverse] inference.'" *McClain*, 137 N.C. App. at 184, 527 S.E.2d at 716 (quoting *R.I. Hosp. Trust Nat'l Bank v. E. Gen. Contractors, Inc.*, 674 A.2d 1227, 1234 (R.I. 1996)).

---

the Court has reviewed as a part of its decision making, is of such a nature or requires the Court to redact or otherwise protect its Order.

{25}    To establish a *prima facie* case of spoliation, a party must show that the spoliator (1) intentionally destroyed or failed to preserve (2) potentially relevant materials (3) while aware of the possibility of future litigation. *Arndt v. First Union Nat'l Bank*, 170 N.C. App. 518, 528 613 S.E.2d 274, 281 (2005); *Praxair, Inc. v. Airgas, Inc.*, 2000 NCBC LEXIS 5, at *57 (N.C. Super. Ct. Aug. 14, 2000). The Court does not believe there has been a showing of intentional destruction, but that potential relevance of the lost data is clearly established. So the issue turns on whether SCR-Tech negligently failed in a duty to preserve the data at a time when it was aware of the possibility of future litigation for which the data was potentially relevant.

### ii. Rule 26(g)

{26}    Rule 26(g) provides that an attorney's signature on a discovery response

> constitutes a certification that the attorney . . . has read the . . . response . . . and that to the best of the knowledge, information, and belief of that attorney . . . formed after a reasonable inquiry it is: (1) consistent with the rules and warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; (2) not interposed for any improper purpose, such as to harass or cause unnecessary delay or needless increase in the cost of litigation; and (3) not unreasonable or unduly burdensome or expensive, given the needs of the case, the discovery already had in the case, the amount in controversy, and the importance of the issues at stake in the litigation.[2]

N. C. R. Civ. P. 26(g). If an attorney makes a certification in violation of Rule 26(g), "the court . . . shall impose upon the person who made the certification, the party on whose behalf the request, response, or objection is made, or both, an appropriate sanction, which may include an order to pay the amount of the reasonable expenses incurred because of the violation, including a reasonable attorney's fee." *Id.* The

---

[2] Notably, Federal Rule 26(g) varies from North Carolina's rule. The federal rule includes a provision that an attorney's signature on an interrogatory response constitutes an attestation of mandatory disclosures are complete and correct at the time they are made. North Carolina does not require these mandatory disclosures and the state Rule 26(g) does not include such a provision.

issue turns on whether SCR-Tech made its March 2013 certification for the purpose of creating unreasonable delay, burden, or expense.

### c. Analysis

#### i. Spoliation

{27}    The Court first addresses Plaintiff's argument that no spoliation occurred because Plaintiff never had possession of the Forentech materials. Spoliation need not rest on actual possession. The North Carolina Court of Appeals has held that a litigant is responsible for producing, and inferentially preserving, documents if the party has "actual possession, custody or control of the materials or has the legal right to obtain the documents on demand." *Pugh v. Pugh*, 113 N.C. App. 375, 380, 438 S.E.2d 214, 218 (1994) (quoting *Resolution Trust Corp. v. Deloitte & Touche*, 145 F.R.D. 108, 110 (D. Colo. 1992)); *see also Victor Stanley, Inc. v. Creative Pipe Inc.¸* 269 F.R.D. 497, 523 (D. Md. 2010) (ruling documents under the control of the litigant if it has the authority and practical ability to obtain the documents from a non-party).

{28}    The Court concludes that, at least at some points in time, SCR-Tech had the practical ability to obtain and had *de facto* control over the forensic examination and Report, whether or not it actually took possession of it. Within three days of the Hartensteins' termination, SCR-Tech's counsel wrote a demand letter for the return of information, citing that SCR-Tech had commenced a forensic examination upon which it made certain conclusions. (Defs. Supp. Br. Rule 26(g) Sanctions Ex. 8.) The correspondence made no reference to Catalytica or that SCR-Tech had not itself undertaken the investigation or read the Report. The letter clearly suggests to the contrary. Had a demand been made for the Report's production, the Court concludes that SCR-Tech could have caused it to be produced.

{29}    Further, SCR-Tech had the practical ability to obtain the evidence because the underlying evidence belonged to SCR-Tech, was taken from its premises, and could have only been accessed through permission granted by SCR-Tech or someone with authority to issue permission on its behalf. (Cardwell Dep.

78:7–:19.) Zack granted that permission on SCR-Tech's behalf and controlled that access to SCR-Tech's premises at a time when he was both Catalytica's CEO and an officer and manager of SCR-Tech. *See Jay Grp., Ltd. v. Glasgow*, 139 N.C. App. 595, 601, 534 S.E.2d 233, 237 (N.C. App. 2000) (noting that an agent's knowledge is chargeable to his principal).

{30} There is authority that, having clearly asserted the relevance of the Report, SCR-Tech had the duty to advise the Hartensteins of the evidence at least up until December 15, 2005, in a manner that would allow them to seek its protection if SCR-Tech were not making efforts itself to provide for such protection. *City Grill Hospitality Grp., Inc. v. Nationwide Mut. Ins. Co.*, No. 5:12-CV-610-F. 2014 U.S. Dist. LEXIS 51215, at *11 (E.D.N.C. Apr. 14, 2014).

{31} This leads to the inquiry of whether SCR-Tech had any anticipation of litigation after December 15, 2005, adequate to trigger a duty to preserve. Plaintiff contends it had no such anticipation until close to the date of the filing of this litigation in 2008, whereas Defendants contend that SCR-Tech had anticipated litigation in November 2006. The significance is that it is less likely, based on Cardwell's testimony, that Forentech would have discarded any materials by November 2006. Moreover, it is unclear whether Forentech had already discarded any data when Cogdell called Forentech in 2010.

{32} The Court does not believe that Plaintiff should be able to take unfair advantage of this absence of proof when the following is evident: (1) in 2005, Plaintiff clearly asserted the relevance of the Report to potential litigation, but did not ask either Catalytica or Forentech to preserve the evidence from the examination; (2) although the Amended Complaint asserts the relevance of the information, Cogdell did not contact Forentech until 2010, two years after initiating this lawsuit; (3) in 2010, when Cogdell was admittedly aware of Forentech's identity, he did not seek to speak with Mark Cardwell who had supervised the investigation, request or instruct Forentech to maintain such records as it may have had at that time, or ask for written confirmation that it no longer had such information; (4) it would be atypical for Forentech to discard underlying data absent

a client request to the contrary; and (5) SCR-Tech continued to consider the forensic investigation and its results to be particularly relevant and material throughout this period.

{33} The Court does not need to make an express finding that SCR-Tech contemplated the present litigation as early as November 2006, although the Court believes that Defendants put forward a formidable argument to that effect. (Defs. Supp. Br. Rule 26(g) Sanctions Ex. 11; Defs. Post-Hr'g Br. Ex. 4.); *see also Sanofi-Aventis DeutschlandGmbH v. Glenmark Pharms., Inc.*, 748 F.3d 1354, 1362 (Fed. Cir. 2014) (determining the litigation was "'reasonably foreseeable' to [the alleged spoliator] no later than the date asserted for 'work product' in its privilege log").

{34} Based on this combination of circumstances, the Court concludes that Defendants are entitled to the inference that the evidence regarding Forentech's investigation was lost or discarded during a period when Plaintiff had a duty to preserve the evidence but negligently failed to carry out that duty. The Court finds that the facts Defendants have presented are adequate to trigger Plaintiff's responsibility to "rebut[] and explain[] the evidence adduced against [SCR-Tech]" with a "fair, frank and satisfactory explanation." *McLain*, 137 N.C. App. at 186–87, 527 S.E.2d at 718 (internal quotations and citations omitted). The Court need not find that the spoliation was intentional to impose this burden. *Id.* at 184, 527 S.E.2d at 716. The Court finds that Plaintiff has failed to adequately rebut that the evidence was spoliated.

{35} The Court must then address what sanctions are appropriate and are in the proper proportion both to the absence of intentional wrong doing and to the prejudice that Defendants can demonstrate flows from the loss of evidence. When fashioning sanctions for spoliation, the Court considers the prejudice caused to the moving party. *Clark v. Alan Vester Auto Grp., Inc.*, 2009 NCBC LEXIS 13, at *27 (N.C. Super. Ct. July 17, 2009). To date, North Carolina courts have been constrained in the scope of sanctions they have imposed for spoliation. "[T]he principle of spoliation of evidence as applied in North Carolina has evidentiary consequences and has not been relied upon as a basis for [other] sanctions in the

absence of other statutory or rule violations authorizing the imposition of sanctions." *Holloway v. Tyson Foods, Inc.*, 193 N.C. App. 542, 543–44, 668 S.E.2d 72, 73 (2008). The only additional rule violation at issue here is Rule 26(g), discussed below.

{36} The Court agrees that some potential prejudice has been avoided by the Report's production, along with substantial supporting data, consisting of approximately 3,500 documents. The Report contains certain findings that Defendants have indicated that they seek to use, asking that their ability to do so not be precluded by any sanction the Court orders. (Defs. Supp. Br. Rule 26(g) Sanctions 17, 20.)

{37} The Court believes, however, that this production does not eliminate all potential prejudice represented by Defendants' inability to have equal access to the same body of data to allow their own examination and expert report. After full and deliberate consideration, the Court concludes that Defendants have not demonstrated adequate prejudice to warrant the extreme sanctions of striking claims for the Hartensteins' misappropriation of confidential information or restricting any proof of acts taken before December 15, 2005, that might be relevant to improper disclosure and misappropriation after that date.

{38} The Court concludes that the appropriate sanction is a permissive, but not mandatory, adverse inference. While the Court defers settling the precise language of a jury instruction until a later date, the Court will deliver an instruction reflecting a finding that Plaintiff negligently failed to preserve certain evidence from the Forentech investigation, and the jury will be allowed, but not required, to infer that the evidence that has not been preserved would have been favorable to Defendants in rebutting the contention that the Hartenstein's removed "documents containing SCR-Tech's confidential, proprietary and trade secret information" from SCR-Tech computers. (Compl. ¶ 33; Am. Compl. ¶ 33.)

## ii. Alleged Violation of Rule 26(g)

{39} The Court concludes that Plaintiff did not intentionally include a misrepresentation in its March 2013 interrogatory response. However, there is substantial evidence that Plaintiff did not make a "reasonable inquiry" before making that response. The Court further concludes that Plaintiff did not interpose its response for an improper purpose or to impose on Defendants an unreasonable or undue burden. *See* N.C. R. Civ. P. 26(g). Upon discovering the error, Plaintiff made prompt effort to revise its response. While the Court believes that there may not have been a full, reasonable inquiry, the wording of Rule 26(g) does not compel a sanction for that failure unless accompanied by one of the other requisite findings: interposing the response for an improper purpose or creating unreasonable delay or expense. In any event, the Court concludes, in its discretion, that should a sanction be required, the permissive adverse inference it has described is adequate. N.C. R. Civ. P. 37(a)(2)–(3) (providing that an incomplete interrogatory response justifies an order compelling a complete response, not sanctions).

{40} Accordingly, Defendants' request for sanctions pursuant to Rule 26(g) is DENIED.

## 3. Plaintiff's Request for Restoration of Backup Tapes and Cost Shifting

{41} The Steag Defendants have located a number of backup tapes that have not been produced that Plaintiff contends may contain relevant information for document custodians. The parties have exchanged several letters with the Court through which the dispute has been significantly narrowed.

{42} Initially, Defendants contended that they should not be required to search the universe of tapes at issue because of the extraordinary expense in doing so—into the millions of dollars—and the expected utility in the effort, measured by relevant nonduplicative evidence that the search might produce, was limited. In part, Defendants argued that the files of at least three of the custodians in question were likely produced in other ways. Plaintiff initially claimed that Defendants

exaggerated the costs that may be involved and further that they had no adequate basis to assert that the search would uncover only duplicative information.

{43}    The Court's January 23, 2014, Order requested that the parties agree on and undertake a sampling search at reduced expense in order to better predict the utility of a full search or to suggest a more limited search, matched to reasonably expected fruits of the search.  The Court has now been advised that such a sampling is not feasible, but that other modified procedures that substantially reduce costs can be implemented.  As a result, the Court has been provided a significantly reduced cost estimate and a more confined search process to which the parties have agreed.  This dispute has then narrowed to whether the effort should go forward, and if so, how the Court should allocate costs totaling $140,545, representing the following:

| | |
|---|---|
| $ 250.00 | External Hard Drive |
| $ 2,400.00 | Restore Six Exchange Server Tapes |
| $ 37,000.00 | Extract Relevant Non-E-mail Data |
| $ 46,250.00 | Extract Relevant E-mail Data |
| $ 18,000.00 | Forensic Technical Time for Restoration |
| $ 6,000.00 | Vender Travel Expenses |
| $ 2,700.00 | OCR (making data searchable) |
| $ 27,945.00 | Six Months Hosting |

{44}    Defendants do not seek to include attorneys' fees associated with reviewing materials for privilege and relevance.  Defendants contend that Plaintiff should be responsible for at least one-half of the above costs if not the entire cost.  Plaintiff counters that it should be required to pay only $11,000, which represents over half of the costs fairly associated with actual data restoration.  Defendants contend that all the charges are fairly allocable to the cost of restoration of inaccessible data.  Each of the parties rely on the same authorities for their arguments. *See Zubulake v. UBS Warburg LLC*, 216 F.R.D. 280, 290 (S.D.N.Y. July 24, 2003) (Zubulake III).

{45}     In general, Rule 26 reflects a balance that the producing party should generally bear the cost of review and production of electronic data once the data has been converted to an accessible format; but, a court may shift to the requesting party costs necessary to restore inaccessible data.  In considering the propriety of such cost shifting, the Court should be mindful of the proportionality of the cost of the effort to the expected or actual utility of the discovery, measured, at least in part, by whether the effort yields fruit.  *See* The Sedona Conference, *The Sedona Conference Commentary on Proportionality in Electronic Discovery: A Project of the Sedona Conference Working Group on Electronic Document Retention & Production* 8 (Conor R. Crowley et al. eds., 2013).  Here, the parties dispute both the costs to be incurred and the expected utility of the effort.

{46}     Courts have continued to struggle with fashioning objective rules to apply when addressing whether to shift costs related to the restoration and search of electronically stored information  ("ESI").  As a general proposition, it is accepted that

> cost-shifting should be considered *only* when electronic discovery imposes an 'undue burden or expense' on the responding party.  The burden or expense of discovery is, in turn, 'undue' when it 'outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

*Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 318 (S.D.N.Y May 13, 2003) (Zubulake I) (emphasis in original) (quoting Fed. R. Civ. P. 26).  Whether production is unduly burdensome turns on whether it is kept in an accessible format.  *Id.* Backup tapes are considered inaccessible because to restore them, "fragmented data must be de-fragmented, and erased data must be reconstructed, all before the data is usable." *Id.* at 320.

{47}     Federal courts have developed a greater number of guiding decisions than have our North Carolina courts.  Judge Tennille, former Chief Judge of the North Carolina Business Court, in 2006 sought to fashion a workable rule.  After

reviewing multiple approaches, he concluded that the following factors should be considered when determining whether cost shifting is appropriate:

> (i) [whether] the discovery sought is unreasonably cumulative or duplicative; (ii) [whether] the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; [and] (iii) [whether] the discovery is unduly burdensome or expensive, taking into account the needs of the case, the amount in controversy, limitations on the parties' resources, and the importance of the issues at stake in the litigation.

*Analog Devices, Inc. v. Michalski*, 2006 NCBC LEXIS 16, *20–21 (N.C. Super. Ct. Nov. 2, 2006). While the law related to ESI has continued to develop, the Court believes Judge Tennille's decision serves as an appropriate guiding star.

{48} The difficulty here is applying those factors based on the competing arguments. Appreciative of efforts to restrict the possible costs and burdens of the search, the Court nevertheless concludes that it will be better equipped to undertake a final analysis after the search, review, and production has been completed and the extent of nonduplicative information that was uncovered can be measured. It is not unfair that the requesting party should have to balance the strength of its belief that the requested search will bear fruit against their willingness to incur the costs of the effort if their belief proves to be wrong.

{49} Accordingly, the Court orders as follows: (1) if Plaintiff wishes for the effort of reviewing the tapes to go forward, it shall be required to advance one-half of the estimated costs of $140,545; (2) the Court will review a final cost allocation upon presentation as to the utility of the search measured by the degree of non-duplicative potentially relevant information produced as a result.

## 4. Defendants' Motion for Contempt and for Sanctions Pursuant to Rule 37(b)(2)

{50} The Court issued an Order on August 13, 2013, that recognized a joint defense privilege for certain correspondences between Plaintiff and Ebinger and distinguished communications coordinating litigation strategies of the two entities from communications by which Ebinger assisted Plaintiff pursuant to a cooperation agreement between them. The Order discussed the distinction between a privilege

based on common legal interests and the lack of privilege when based solely on joint business interests.

{51} Defendants claim that Plaintiff has refused to produce documents that cannot be privileged as defined in the Court's August 13, 2013, Order. (Defs' Mot. Contempt and Sanctions Against SCR-Tech Under Rule 37(b)(2).) Plaintiff counters that any documents it has withheld are privileged as measured by that Order.

{52} Having considered the submissions of the parties, the Court concludes that it must review the documents in question in order to resolve the matter. Plaintiff shall submit the 128 documents in dispute for the Court's *in camera* review, together with an adequate explanation of the basis on which Plaintiff claims the documents are privileged.

{53} The Court understands that Plaintiff has otherwise agreed to prepare a privilege log regarding documents that it has required to be returned pursuant to the claw-back agreement between the parties, and that this agreement moots, at least at this time, the Court's need to further consider any contest as to privilege of these documents.

5. **Defendants' Request that Plaintiff Undertake a Renewed Search Pursuant to the Parties' Make Available Agreement**

{54} The parties agreed to a protocol for document production, referred to as their "Make Available Agreement." Paragraph 12 of that Agreement recites that "[t]he documents initially being made available on the review platform by SCR-Tech were collected on or about February 2009 and include documents in the custodians' possession at that time. In addition, SCR-Tech will also make available on the review platform responsive documents (1) created after the February 2009 collection, or (2) that were not included in the February 2009 collection." (Letter from Benjamin Sidbury, Counsel for Defs. Steag Energy Servs. GmbH and Steag GmbH, to Hon. James L. Gale (July 15, 2014) Ex. A.)

{55} Defendants contend that Plaintiff has not done what it promised to do, as evidenced by the number of documents produced by third parties that were not

but should have been included in Plaintiff's production. Defendants contend that the failure is sufficiently egregious to require that Defendants conduct a new search, collection, and production for any documents created after February 2009.

{56}    Plaintiff counters that there is no adequate justification for such an extensive, supplemental search when more targeted efforts would suffice, and that Defendants' position is essentially that Plaintiff must start all over. Plaintiff has agreed to do a comprehensive search and re-collection as to certain categories of documents and has expressed a willingness to consider additional categories but resists the breadth of further searching upon which Defendants insist.

{57}    The Court is again not well-positioned to make a final determination based on competing arguments at this stage. The Court orders as follows: First, Defendants shall identify four specific subject areas for which they contend a search and re-collection effort is warranted, including specific custodians they contend should be included and the search terms which should be employed. Presumptively, those search terms should be limited to those proposed in Exhibit H of Defendants' July 15, 2014, letter to the Court. Second, the parties shall exhaust good faith efforts to resolve differences between them as to the proposed search effort. Third, assuming agreement, Plaintiff shall undertake the revised search and collection; but, failing agreement, the Court will resolve or, if necessary, appoint one with authority to resolve the outstanding disputes, after which Plaintiff will implement the search and collection. Finally, to be measured by the results of this effort, Defendants may request a further search and collection through demonstrating that the search in these four areas documents suggests that there have been more extensive failures to produce, justifying the cost of further efforts.

{58}    As to these various matters, IT IS SO ORDERED, this the 31st day of December, 2014.